**PENN COMMUNICATIONS SPECIAL-TIES, INC., et al.**

v.

**Donald HESS et al.**

**Civ. A. No. 74–2476.**

United States District Court,
E. D. Pennsylvania.

Jan. 30, 1975.

Robert D. Powell, Wm. H. Roberge, Jr., Washington, D. C., for plaintiffs.

Arlen Specter, Philadelphia, Pa., for defendants.

MEMORANDUM

GORBEY, District Judge.

Defendants have moved for sanctions under Rule 37 of the Federal Rules of Civil Procedure because of the refusal of one of the plaintiffs, Michael Piscanio, President of Penn Communications Specialties, Inc., to answer numerous questions in the course of his deposition.

The plaintiff, while being deposed in the course of pretrial discovery, by claiming his constitutional privilege against self-incrimination, refused to answer questions relevant to the action on fifty different occasions, which refusal defendants allege prejudiced and significantly impaired their rights and ability to develop an effective defense to the lawsuit.

The law applicable to the issue is clear. In a leading case, Lyons v. Johnson, 415 F.2d 540 (9th Cir. 1969), the court stated:

"The naked question therefore simply was whether a plaintiff can refuse to submit to any discovery whatsoever upon his law suit, by asserting a Fifth Amendment privilege against any interrogation of him, and then demand that he nevertheless be permitted to continue with the legal pursuit of his claim, no matter what prejudice or possible unequal protection there might be involved to the defendant from such court acquiescence . . . . [plaintiff] has received full protection against any such possibility [of self-incrimination] from the court's complete honoring of the scope of the privilege asserted by her.

"Her obtaining of this shield, however, could not provide a sword to her for achieving assertion of her claims against the defendants without having to conform to the processes necessary to orderly and equal forensic functioning. Clearly, the process of discovery has become increasingly recognized as one of the primary and essential elements in making federal court busi-

ness flow and in contributing to the accomplishing of trial justice or settlement termination of litigation. The scales of justice would hardly remain equal in these respects, if a party can assert a claim against another and then be able to block all discovery attempts against him by asserting a Fifth Amendment privilege to any interrogation whatsoever upon his claim. If any prejudice is· to come from such a situation, it must, as a matter of basic fairness in the purposes and concepts on which the right of litigation rests, be to the party asserting the claim and not to the one who has been subjected to its assertion. It is the former who has made the election to create an imbalance in the pans of the scales." *Id*. at pages 541 and 542.

Accordingly, the court concluded:

"[The plaintiff] of course had the right to make that choice, but she must now accept the fact that the doors of the law are closed to any attempts by her to reassert her alleged claims." *Id*. at page 542.

While this classic case dealt with a situation where the plaintiff refused to submit to any discovery whatsoever, the reasoning of the court is equally applicable to a situation where, as here, plaintiff did not refuse any discovery at all, but refused to answer many questions. In such situations it has been judicially determined that dismissal was an appropriate sanction. Bramble v. Kleindienst, 357 F.Supp. 1028 (D.C.Colo.1973); Brown v. Ames, 346 F.Supp. 1176 (D. Minn.1972).

In Stockham v. Stockham, 168 So.2d 320 (Fla.1964), the Supreme Court of Florida affirmed the holding of the District Court of Appeals that the wife plaintiff who refused to respond to defendant's request for admissions must answer, and that upon her failure to do so (on claiming protection against self-incrimination) her suit for divorce would be dismissed. The court held that neither the provisions of Section 12 of the Declaration of Rights of Florida nor the Fifth Amendment to the Federal Constitution, for protection against self-incrimination were available to a litigant in such suit, and if insisted upon would result in dismissal of that party's suit.

Five years later, in another divorce case, Simkins v. Simkins, 219 So.2d 724 (Fla.D.C.App.1969), plaintiff husband refused to answer questions in a discovery deposition regarding the charge of adultery which the wife had leveled against him, invoking his constitutional privilege against self-incrimination. An interlocutory appeal was taken from an order to answer. The Florida District Court of Appeals for the Third Circuit refused to follow the Stockham case, determining, one judge dissenting, that Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) and Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), required a contrary conclusion. Also referred to was Malloy v. Hogan, 378 U.S. 1, 84 S. Ct. 1489, 12 L.Ed.2d 653 (1964), which held that the self-incrimination clause of the Fifth Amendment to the Constitution of the United States was applicable to the states by reason of the Fourteenth Amendment. Accordingly, the conclusion reached was that the Fifth Amendment affords protection "without penalties".

The dissenting opinion was based on the conclusion that the Spevack and Garrity cases did not require a decision contrary to the Stockham opinion. The dissenting judge pointed out that in both cases neither party who sought protection against self-incrimination was before a court voluntarily seeking relief; that both men were summoned to appear. Accordingly, the dissenting judge concluded that "In my opinion the *Spevack* and *Garrity* holdings apply only to persons whom the law requires to appear before the bar of justice, judicial or quasi-judicial."

Three years later in Minor v. Minor, (Fla.D.C.App.1970) 232 So.2d 746, the problem was again raised when, in a pretrial deposition of the wife, she invoked her Fifth Amendment privilege against self-incrimination in response to questions relating to defendant's charge of adultery. The trial court had entered an order compelling appellant to answer such questions or suffer the dismissal of her complaint. From such order plaintiff brought an interlocutory appeal to the District Court of Appeals for the Second District. The court, one judge dissenting, concurred with the dissenting opinion in the Simkins case, and upheld the trial judge. The court stated at page 747:

> "Now concededly, in those cases [the Garrity and Spevack cases] the parties invoking the Fifth Amendment were wrongfully *penalized* for their 'taking the Fifth.' They were forced to choose, as it is said 'between Scylla and Charybdis.'[1] But there they were *involuntarily* thrust into such quandary while here, the invoking party is *voluntarily* the moving party affirmatively seeking equity. Appellant's choice in this case is not, *involuntarily,* one between two totally disadvantageous alternatives, as were the choices in Garrity and Spevack, supra, but rather, *voluntarily* one between two alternatives one of which can be employed to *some* advantage. Appellant *can* gain the affirmative relief she seeks from her choice, and the choice is freely hers; Garrity and Spevack on the other hand couldn't gain in any event, yet they were compelled to choose.

> "We conclude then, that appellant suffers no 'penalty' in the sense spoken of in Spevack and neither that case

nor Garrity, supra, can operate to vitiate the holding of our Supreme Court in Stockham, supra. . . ."

In Mahne v. Mahne, 124 N.J.Super. 23, 304 A.2d 577 (1973), the court cited, *inter alia,* both the Minor and the Stockham cases. Adopting the views supported by the two Florida cases, the court quoted from Christenson v. Christenson, 281 Minn. 507, 162 N.W.2d 194 (Minn. Sup.Ct.1968) as follows:

> "Research indicates that with the exception of Bishop v. Bishop, 157 Ga. 408, 121 S.E. 305, all of the cases which have dealt with the legal questions presented herein have recognized that a motion to dismiss a complaint . . . should be sustained where the plaintiff has refused to answer questions pertinent to the issues involved on the ground of self-incrimination. These decisions appear to have been based upon the rationale that although the privilege against self-incrimination is available to either party to a civil action the party who seeks affirmative judicial relief from the court and at the same time invokes this privilege should not be permitted to prevail and, in effect, 'eat his cake and have it too' . . . [at 202]."

While the cases heretofore cited are divorce cases, the reasoning involved is equally applicable to other types of litigation. *See* Walton v. Robert E. Haas Construction Corporation, (Fla.App. 1972) 259 So.2d 731, a motor vehicle accident case, citing at page 734 the Minor and Stockham cases. The conclusion is therefore that unless the plaintiff answers the interrogatories in question, the complaint will be dismissed with prejudice.

---

1. For those whose recollections of the Classics have become dim with the passage of time, the idea expressed above may be illustrated in the idiom of the day by either, or both, of the following: "Suddenly our hero finds himself (i) between a rock and a hard place, or (ii) between the devil and the deep blue sea." In the second illustration, significance lies not in the color but in the depth, density, and temperature of the fluid.